IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| HOLLIE G.,[1] | No. 3:23-cv-00352-JR |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Hollie G. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income under the Social Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

ECF No. 19. For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

Born in May 1985, plaintiff alleges disability beginning December 30, 2019. Tr. 270, 276. Plaintiff alleged disability due to "fibromyalgia, chronic pain, back pain, and mobility issues." Tr. 323. Her application was denied initially and upon reconsideration. Tr. 140, 146; 154, 164. On January 20, 2022, plaintiff appeared at an administrative hearing before Administrative Law Judge ("ALJ") David A. Mason Jr. Tr. 29-59. On January 27, 2022, the ALJ issued a decision finding plaintiff not disabled. Tr. 10-28. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 15. At step two, the ALJ determined the following impairments were medically determinable and severe: "obesity; fibromyalgia; degenerative disc disease of the lumbar, thoracic, and cervical spine; depression; and anxiety." Tr. 15. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 16.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform a range of sedentary work except:

> [S]he requires the ability to change positions from standing to sitting or sitting to standing once per hour for 10 minutes at a time and she would remain on task while changing positions; she can occasionally climb ramps or stairs with a handrail, but she can never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she must avoid dangerous hazards such as unprotected heights or the operational control of dangerous

moving machinery, but she can avoid ordinary hazards in the workplace such as boxes on the floor, ajar doors, or approaching people or vehicles; she is limited to simple, routine, and repetitive tasks at a frequent level, but not at a production rate pace such as assembly line work; she is limited to simple work related decisions with few, if any, work place changes; and she is limited to occasional contact with co-workers, supervisors, and the general public.

Tr. 17-18.

At step four, the ALJ determined the claimant was unable to perform past relevant work. Tr. 21. At step five, the ALJ found there were other jobs existing in significant numbers in the national economy that plaintiff could perform such as packer, assembler, and inspector. Tr. 22. The ALJ therefore found plaintiff not disabled from December 30, 2019, through the date of decision. Tr. 22-23.

## DISCUSSION

Plaintiff argues the ALJ committed two harmful errors.[2] She contends the ALJ erred by (1) discounting her symptom testimony without a clear and convincing reason for doing so, and (2) failing to consider significant and probative evidence of job availability that undermined the ALJ's step five conclusion that there were jobs in the national economy plaintiff could perform. For the reasons that follow, the Court finds the ALJ erred at step five, reverses, and remands for further proceedings.

---

[2] Plaintiff also argues the ALJ "constructively reopened a prior [disability] application," but "acknowledges that the ALJ's failure to explicitly address the prior application does not, in and of itself, warrant remand." Pl. Br. at 4-5. Plaintiff argues that her prior claim was effectively reopened because the ALJ considered evidence from the time period before that claim's resolution. ECF No. 11 at 5. As other courts in this District have noted, however, a "prior disability claim is not deemed to have been reconsidered on the merits merely because the evidence reviewed by the ALJ included evidence of the claimant's condition at the time of the previous application." *Kevin M. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 17690153, at *3 (D. Or. Dec. 15, 2022). That is the case here. Although the ALJ addressed medical and other evidence from before the previous nondisability determination, plaintiff never requested a reopening of the prior application, and the ALJ did not impliedly reopen consideration of the prior application in his review of this case. The ALJ did not err on this basis.

3 – OPINION & ORDER

I.    **Step Five**

Plaintiff contends substantial evidence does not support the ALJ's reliance on job availability testimony from the vocational expert given the competing job availability numbers she submitted after the hearing. Pl.'s Br. at 9-14. In her memorandum in support of request for Appeals Council review plaintiff submitted competing job availability evidence suggesting there were, in fact, only 3,966 jobs available to plaintiff in the national economy. Tr. 363-70. The Ninth Circuit has addressed an ALJ's obligations when considering contradicted VE testimony at step five in some detail in recent years. When a claimant introduces competing job availability evidence that is "significant and probative" (i.e. from reliable sources and capable of changing the outcome of the proceeding), an ALJ must "address and resolve" the discrepancies between the VE testimony and plaintiff's newly introduced evidence. *White v. Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022); *Wischmann v. Kijakazi*, 68 F.4th 498, 501-02 (9th Cir. 2023). When an ALJ addresses a claimant's rebuttal job numbers that compete with a VE's testimony, the ALJ "need only explain [her] rejection" of the rebuttal evidence." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1189-90 (9th Cir. 2022).

At the hearing, the VE identified three jobs plaintiff could perform in the national economy given her RFC. Relying on the VE's testimony, the ALJ specifically identified these three occupations in his written opinion: "packer" (identified by Dictionary of Occupational Titles (DOT) code 559.687-074), "assembler" (identified by DOT 713.687-018), and "inspector" (identified by DOT code 669.687-014). Tr. 22. The VE asserted there were 32,000 positions for "packer," 50,000 for "assembler," and 41,000 for "inspector." Tr. 56. Defendant concedes that the ALJ's reliance on "packer" at step five was error, Def. Br. at 8–9, but argues this error was harmless in light of the other two jobs identified ("assembler" and "inspector"). *Id.* Defendant

further argues that plaintiff's rebuttal evidence is insufficient to undermine the number of positions identified by the VE. *Id.* at 9–12.

Defendant argues that plaintiff's evidence is not significant or probative, that this case is directly analogous to *Wischmann v. Kijakazi*, 68 F.4th 498 (9th Cir. 2023), so the ALJ's decision should therefore be affirmed. In *Wischmann*, as here, the plaintiff challenged the ALJ's conclusion, based on VE testimony, that a significant number of jobs existed in the national economy. *Id.* at 504. The plaintiff sent a letter to the Appeals Council attaching six pages of printouts from Job Browser Pro that contained numbers that were drastically lower than the job numbers offered by the VE. *Id.* at 503. The printouts in *Wischmann*, however, were themselves undecipherable, with confusing headings and columns titles such as "QSS-Q.LQ.up" and "Selt:gulgy-ed." *Id.* The attorney did not discuss the printouts in the letter to the Appeals Council. *Id.* at 503-04. The pages did not indicate their source, the process by which the data were generated, or how the information supported the plaintiff's claim, and the numbers did not match the plaintiff's argument. *Id.* at 503. The Ninth Circuit concluded the data was not probative because the printouts were not identifiable as from Job Browser Pro, were not comprehensible, and gave no indication of a date. *Id.* at 507. The Ninth Circuit also explained that because the pages provided no information about how the job numbers were produced, did not indicate it was produced using the same methodology of the VE, did not state who produced the outputs, and did not provide information on what other variables may have been entered, the information provided was not probative. *Id.* at 506-07

Unlike in *Wischmann,* the evidence plaintiff's counsel submitted to the Appeals Council in this case is probative and readily understandable. When a claimant submits significant and probative evidence of job availability numbers to the Appeals Council, "the agency ha[s] an

5 – OPINION & ORDER

obligation under *Buck* to address and resolve [it]." *White v. Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022). In her submission to the Appeals Council in this case, plaintiff explained that her counsel obtained the competing job availability data using Job Browser Pro, identifying the source and the person who obtained the data. Tr. 363-64. Plaintiff likewise confirmed she used the DOT job numbers, as the VE confirmed he used. *Id.* The printouts from Job Browser Pro also describe the software's sources of information, which include the Bureau of Labor Statistics, U.S. Department of Labor; the United States Census Bureau; and SkillTRAN, LLC. Tr. 363-370. Thus, plaintiff's data includes the same sources the VE testified he used, and the numbers correspond to the numbers on the Job Browser Pro printouts. Tr. 363-70. Further, the sources identified in the printout include dates of the government databases that are as recent as 2020, thereby showing that the data was not out of date at the time the comparables were run. *See, e.g.*, Tr. 365. Thus, the deficiencies identified in *Wischmann* are not present.

Plaintiff's competing job availability evidence is also significant to the outcome. On review, a court must consider "whether there is support for a claimant's counsel's approach in generating job-number estimates" as part of its analysis of whether plaintiff's competing job availability numbers are comparable to the VE evidence and would change the outcome of her case. *White*, 44 F.4th at 836 (cleaned up). There is support for plaintiff's counsel's approach in this case. Plaintiff's attorney used Job Browser Pro and the same DOT codes the VE used. Tr. 363-70. Plaintiff's printouts clearly identify the jobs, the DOT codes identifying the job positions, information sources and dates, and available positions in the national economy. And while it is true that Job Browser Pro is a "tool ... meant to assist a VE in performing a complex matching exercise of various sources of information," *Wischmann*, 68 F.4th at 507, plaintiff's evidence shows he used the same sources of information the VE testified to using. Tr. 363-70. It

is reasonable to assume the same program would produce the same information given the VE testified to only using the DOT specific numbers. *See* Tr. 56, 365-70. The Ninth Circuit has made it clear that a "vast discrepancy between the VE's job numbers and those tendered by [plaintiff], presumably from the same source, is simply too striking to be ignored." *Buck*, 869 F.3d at 1052. Plaintiff's new evidence is significant and probative, and it was error for the Appeals Council not to consider it.

Considering there may be only 3,966 jobs available to plaintiff, the record lacks substantial evidence to support the ALJ's finding that plaintiff can perform jobs that exist in significant numbers in the national economy. *See Randazzo v. Berryhill*, 725 F. App'x 446, 448 (9th Cir. 2017) (stating that 10,000 jobs "may not amount to a significant number of jobs in the national economy"); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (stating that 25,000 jobs in the national economy was a "close call"); *Lisa L. v. Comm'r of Soc. Sec.*, 2018 WL 6334996, at *4 (D. Or. Dec. 5, 2018) (concluding that 11,084 jobs was not a significant number of jobs). Thus, the ALJ harmfully erred, and failed to meet the burden of step five to show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy").[3]

---

[3] In her Reply, plaintiff concedes that "if remand is warranted on [the step five] ground, the other issues raised are moot." Pl. Reply at 1. The Court therefore does not consider plaintiff's argument that the ALJ erred by failing to provide sufficiently clear and convincing reasons to discount her symptom testimony, and remands only to cure the harmful step five error.

7 – OPINION & ORDER

**II.     Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Defendant committed harmful error by failing to consider plaintiff's significant and probative job availability evidence. There remain ambiguities and conflicts in the record,

however, so remand is appropriate. The ALJ needs to address plaintiff's competing job availability evidence and resolve the inconsistency between this evidence and the estimates the VE provided. *See Buck*, 869 F.3d at 1052 (remanding to address the inconsistency between the number of jobs presented by the VE and the plaintiff). The Commissioner's decision is reversed, and this case is remanded for further proceedings so that the ALJ can consider the inconsistency between the number of jobs presented by the VE and the plaintiff, and seek further VE testimony at step five, if necessary.

## CONCLUSION

For the reasons given above, the Commissioner's decision is reversed and this case is remanded for further proceedings.

IT IS SO ORDERED.

DATED this 18th day of November, 2024.

                                            /s/ Jolie A. Russo
                                            Jolie A. Russo
                                            United States Magistrate Judge